Seth M. Sproul (CA SBN: 217711)
FISH & RICHARDSON P.C.
12860 El Camino Real
Ste 400
San Diego, CA 92130
Tel: (858) 678-4343 / Fax: (858) 678-5099
sproul@fr.com

John S. Goetz (NY SBN: 4295366) (*pro hac vice* to be filed)
Alexander Mazza (NY SBN: 5752704) (*pro hac vice* to be filed)
FISH & RICHARDSON P.C.
7 Times Square
20th Floor
New York, NY 10036
Tel: (212) 765-5070 / Fax: (212) 258-2291
goetz@fr.com
mazza@fr.com

Susmitha Sayana (DE SBN: 007337) (*pro hac vice* to be filed)
FISH & RICHARDSON P.C.
222 Delaware Ave
17th Floor
Wilmington, DE 19801
Tel: (302) 778-8417 / Fax: (302) 652-0607

*Attorneys for Petitioner Sckipio Technologies S.I. Ltd.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| In re: Application Pursuant to 28 U.S.C. § 1782 of Sckipio Technologies S.I. Ltd., <br><br> PETITIONER, <br><br> - To take the discovery of - <br><br> Nokia Technologies Oy, <br><br> RESPONDENT. | Case No. _____ <br><br> **APPLICATION AND SUPPORTING MEMORANDUM FOR AN ORDER DIRECTING NOKIA TECHNOLOGIES OY TO RESPOND TO DISCOVERY REQUESTS PURSUANT TO 28 U.S.C. § 1782 FOR USE IN A FOREIGN PROCEEDING** |

**TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION ................................................................................................................. 1

II. BACKGROUND ................................................................................................................... 2

III. LEGAL STANDARD ............................................................................................................ 5

IV. ARGUMENT ......................................................................................................................... 7

    A. Sckipio's Application Satisfies the Statutory Requirements ................................ 7

    B. The *Intel* Factors Support Granting the Instant Application ................................ 8

        1. Factor 1: Nokia Is Not a Party to the Germany Proceeding ........................................................................................................ 8

        2. Factor 2: German Courts Are Receptive to U.S. Judicial Assistance .......................................................................................... 9

        3. Factor 3: Sckipio Does Not Seek To Circumvent Foreign Proof-Gathering Restrictions ..................................................... 10

        4. Factor 4: Sckipio's Request Is Not Unduly Burdensome ...................... 11

V. A PROTECTIVE ORDER WILL RESOLVE ANY CONFIDENTIALITY CONCERNS THAT MAY ARISE ............................................ 12

VI. CONCLUSION .................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Ex Parte Application of Apple Inc.*,
  2012 U.S. Dist. LEXIS 66669 (N.D. Cal. May 2, 2012) .......................................................... 12

*Cryolife, Inc. v. Tenaxis Med., Inc.*,
  No. C08-05124 HRL, 2009 U.S. Dist. LEXIS 3416 (N.D. Cal. Jan. 13, 2009) ....................... 9

*In re Eshelman*,
  No. 5:23-mc-80015-EJD, 2023 U.S. Dist. LEXIS 81129 (N.D. Cal. May 9,
  2023) ..................................................................................................................................... 10

*Geo Holdings Corp. v. Google LLC*,
  2024 U.S. Dist. LEXIS 43768........................................................................................................ 8

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004).................................................................................................... *passim*

*Khrapunov v. Prosyankin*,
  931 F.3d 922 (9th Cir. 2019)............................................................................................. 6, 7, 8

*Lufthansa Technik AG v. Thales Avionics, Inc.*,
  Case No. 822MC00034JVSKES, 2023 WL 2908584 (C.D. Cal. March 31,
  2023) ................................................................................................................................... 9, 10

*In re Meiyoukai Med. Corp.*,
  No. 24-mc-80097-BLF, 2024 U.S. Dist. LEXIS 78920 (N.D. Cal. Apr. 30,
  2024) ................................................................................................................................. 8, 11

*In re Murchinson Ltd.*,
  No. 2:23-mc-00191-SB-PD, 2024 U.S. Dist. LEXIS 24321 (C.D. Cal. Jan. 26,
  2024) ............................................................................................................................... 10, 11

*In re Qualcomm Inc.*,
  162 F. Supp. 3d 1029 (N.D. Cal. 2016) ................................................................................... 7

*In re Super Vitaminas, S.A.*,
  No. 17-mc-80125-SVK, 2017 WL 5571037 (N.D. Cal. Nov. 20, 2017)................................. 7

*In re TPK Touch Sols. (Xiamen) Inc.*,
  No. 16-mc-80193-DMR, 2016 WL 6804600 (N.D. Cal. Nov. 17, 2016)................................ 7

*United States v. Global Fishing, Inc.*,
  634 F.3d 557 (9th Cir. 2011)................................................................................................ 6

**TABLE OF AUTHORITIES**

**Statutes**

28 U.S.C. § 1782 ................................................................................................................*passim*

**Other Authorities**

Federal Rule of Civil Procedure 26(c) ........................................................................................ 12

## I. INTRODUCTION

In Germany, Telekom Deutschland GmbH ("DT") provides several broadband internet services to its customers including its so-called "Super-Vectoring" service, which implements ITU-T Recommendation[1] G.993.5 ("G.Vector Standard").  Sckipio is currently negotiating a standards-essential-patent ("SEP") license agreement with DT in Germany concerning DT's Super-Vectoring service (and related services) and those negotiations include one of Sckipio's patents that is essential to Annex A of the G.Vector Standard.[2]  Litigation in Germany ("the Germany Proceeding") will ensue if those negotiations do not yield a license in the coming months.[3]

DT has taken the position that Annex A of the G.Vector Standard is merely an optional functionality not required for operation of its Super-Vectoring service offering.[4]  This stands in direct contradiction to Sckipio's experience with this technology and knowledge of the industry.  Nokia Technologies Oy ("Nokia") is a DT vendor that provides the central office line cards ("Nokia Line Cards") that DT uses to implement its Super-Vectoring service offering.

Given this, the question presented by this application is narrow and simple:  When Nokia Line Cards are used to implement DT's Super-Vectoring service offering in Germany, do they practice Annex A of the G.Vector Standard, or a technological equivalent?  Sckipio believes that the answer to this question is "yes."  In any event, it will be a simple matter for Nokia to confirm one way or the other in response to this application.

---

[1] International Telecommunication Union (ITU) "recommendations" are technical documents that outline the requirements for compliance.  *See generally* ITU-T Recommendations, https://www.itu.int/en/ITU-T/publications/Pages/recs.aspx (last visited Jun 7, 2024).  Although called a "recommendation" they are in fact standards used by the industry to ensure interoperability of components used to implement the recommendations.

[2] *See* Declaration of John S. Goetz ("Goetz Decl."), ¶¶ 3, 4, 6.

[3] *Id.* ¶ 6.

[4] *Id.* ¶ 4.

As such, Sckipio respectfully requests that the Court permit the requested discovery pursuant to 28 U.S.C. § 1782. To facilitate this request, Sckipio has attached the following papers to this petition:

| Application Exhibit | Description |
| --- | --- |
| Application Exhibit A | Proposed Subpoena *duces tecum*, with Attachment A (document requests) |
| Application Exhibit B | Proposed Subpoena *ad testificandum*, with Attachment A (topics) and Attachment B (draft statement in lieu of deposition)[5] |
| Application Exhibit C | [Proposed] Order to Show Cause and Briefing Schedule |
| Application Exhibit D | [Proposed] Order |
| Application Exhibit E | [Proposed] Protective Order |
| Application Exhibit F | Declaration of John S. Goetz |
| Application Exhibit G | Declaration of David Baum |

## II. BACKGROUND

Among Sckipio's portfolio of patents for technologies used in very high-speed digital subscriber line (VDSL) services, is Sckipio' European Patent No. 3,306,826 ("the '826 Patent").[6] The '826 Patent is essential to Annex A of the G.Vector Standard, which covers Sckipio's innovative transmitter-initiated-gain-adjustment ("TIGA") technology.[7]

---

[5] In an effort to ease the burden on Nokia, as noted in the proposed deposition subpoena, Sckipio will accept a statement from Nokia along the lines proposed in Attachment B to that subpoena, in lieu of the requested deposition.

[6] *See* Declaration of David Baum ("Baum Decl.") ¶¶ 3.

[7] *Id*.

DT implements G.vector (profile 35b)[8] in Germany with its 250 MBit/s VDSL services, sometimes referring to this service as its "Super-Vectoring" service. At least some portion of DT's Super-Vectoring service is implemented using Nokia Line Cards.

The focus of the present application is whether these Nokia Line Cards practice Annex A of the G.Vector Standard, or a technological equivalent, when implementing DT's Super-Vectoring service in Germany.

Because Sckipio had reason to believe that DT uses Annex A (along with related technologies covered by Sckipio's SEP portfolio), in January 2024, Sckipio contacted DT offering a FRAND[9] license to its SEP portfolio.[10] DT has taken the position that Annex A is merely an "optional" functionality without providing any supporting technical documentation about how its Super-Vectoring service operates in fact.[11] Instead, DT is seemingly relying on the following language from ITU-T Recommendation G.993.5 and arguing that this language demonstrates that

---

[8] "VDSL2 35b operates on frequencies up to 35.324 MHz with subcarrier spacing of 4.3125 kHz, supports vectoring that is compatible with ITU-T G.993.2 profile 17a. VDSL2 35b supports service providers to optimize their network infrastructure, provides simplified deployment and provisioning options, thereby lowering the overall operational cost for implementing ITU-T G.993.2." G.Fast and VDSL2 35b Profile, https://www.cisco.com/c/en/us/td/docs/routers/access/1100/software/configuration/xe-16-7/cisco_1100_series_swcfg_xe_16_7_x/cisco_1100_series_swcfg_xe_16_7_x_chapter_010101.pdf (last visited Jun 7, 2024).

[9] "Standard-setting in patent-rich environments often requires participants to disclose relevant patents that they own and license patents essential to the standard to all participants on fair, reasonable, and nondiscriminatory (FRAND) terms." Herbert Hovenkamp, *FRAND and Antitrust*, 105 Cornell L. Rev. 1683 (2020).

[10] *See* Goetz Decl. ¶ 3, 4, 6.

[11] *Id*. ¶ 4.

Annex A is merely optional and not required for implementation of a G.Vector Standard compliant service: [12]

> **Annex A**
>
> **Mitigating strong FEXT**
>
> (This annex forms an integral part of this Recommendation.)
>
> **A.1   Introduction**
>
> This annex defines a method for mitigating strong FEXT.
>
> This annex is an optional functionality, only applicable if the VTU is operating according to Annex Q of [ITU-T G.993.2].
>
> The functionality defined in this annex includes:
> - transmitter initiated gain adjustment for VDSL2 transceiver (TIGAV) procedure;
> - use of extended error clipping threshold.

Sckipio disagrees with this interpretation. While language from ITU-T Recommendation G.993.5 references "optional functionally," it goes on to explain that it is "only applicable" where the system is operating according to Annex A of ITU-T G.993.2, which is profile 35b. DT's service is unquestionably using 35b pursuant to G.993.2, and thus in Sckipio's view Annex A is required.[13] Sckipio independently believes that, regardless of this language, DT's Super-Vectoring service in Germany, implemented using the Nokia Line Cards, practices Annex A.[14] In any event, the requested discovery from Nokia sought by this petition will render the debate over the language of the standard moot for present purposes.

The requested information from Nokia is narrowly tailored. Specifically, Sckipio simply seeks the following information:

---

[12] ITU-T Publications, Recommendation ITU-T G.993.5 Self-FEXT cancellation (vectoring) for use with VDSL2 transceivers 76 (Rec. ITU-T G.993.5 (02/2019), https://www.itu.int/rec/dologin_pub.asp?lang=e&id=T-REC-G.993.5-201902-I!!PDF-E.

[13] *Id*.

[14] *See* Baum Decl. ¶ 5.

(1) Documents sufficient to identify the Nokia Line Cards used by DT to implement its Super-Vectoring service compliant with the G.Vector Standard, profile 35b.[15]

(2) Documents sufficient to show that DT's Super-Vectoring service in Germany implemented using the identified Nokia Line Cards necessarily practices Annex A.[16]

(3) Contracts between Nokia and DT for Nokia Line Cards that may support Super-Vectoring services offered by DT compliant with the G.Vector Standard, profile 35b.

(4) A Nokia statement (in the form of a declaration or similar, in lieu of the requested deposition) stating plainly that DT's Super-Vectoring service in Germany implemented using the identified Nokia Line Cards necessarily practices Annex A.[17]

In the event that Nokia contends that Annex A is not necessarily practiced when used to implement DT's Super-Vectoring service in Germany, then Sckipio merely seeks documents that will allow Sckipio to determine independently whether the Nokia Line Cards necessarily use an equivalent technology to the TIGA functionality required by Annex A. In any event, Nokia is in possession of this information, which will not be hard to retrieve.

### III. LEGAL STANDARD

U.S. District Courts have the authority to assist in foreign litigation by compelling discovery from a party located in that Court's district.[18] There are three statutory requirements and a non-exhaustive list of factors decided by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*[19]

---

[15] *See* Exhibit A.

[16] *Id.*

[17] *See* Exhibit B.

[18] *See* 28 U.S.C. § 1782(a); *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004).

[19] *Intel*, 542 U.S. at 259-264.

The statutory requirements are as follows: (1) the person from whom discovery is sought resides in the jurisdiction of the U.S. District Court hearing the petition; (2) the materials will be used in a foreign or international tribunal; and (3) the party filing the motion is an interested person in the foreign proceeding.[20]

Once the statutory requirements have been met, the Court will consider the *Intel* factors in deciding whether to grant a § 1782(a) discovery application.[21] While courts may weigh the circumstances as they see fit, the Supreme Court provided a non-exhaustive list of factors in *Intel Corp. v. Advanced Micro Devices, Inc.* to guide the decision-making process.[22] Arising from the twin aims of § 1782 to assist foreign proceedings and encourage reciprocal aid, the factors are: (1) whether the person ordered to provide discovery is a participant in the petitioner's foreign proceeding; (2) the nature of the foreign tribunal and their receptivity to American judicial assistance; (3) the existence of proof suggesting that the petitioner is circumventing foreign discovery restrictions; and (4) whether the request is "unduly intrusive or burdensome."[23]

The statutory requirements are satisfied here, and the *Intel* factors support granting the instant application.

---

[20] 28 U.S.C. § 1782(a); *see also Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (explaining that although § 1782(a) does not identify three specific requirements, courts have understood there to be three prerequisites for authorization).

[21] *See United States v. Global Fishing, Inc.,* 634 F.3d 557, 563, (9th Cir. 2011) (citing *Intel*, 542 U.S. at 264) (discussing that the court still has discretion to deny an application even when authorized to review).

[22] *Intel.,* 542 U.S. at 264 (2004).

[23] *Id.* at 264–65.

## IV. ARGUMENT

### A. Sckipio's Application Satisfies the Statutory Requirements

The first statutory requirement is that "the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made."[24] Nokia is "found" in this District because two of its offices are located in this District – in San Francisco and Sunnyvale, California.[25] When a party "conduct[s] systematic and continuous local activities in this District," the party is "found" in this District.[26] Thus, Nokia is found in this district because it has two offices and is conducting systematic and continuous activities.[27] Nokia maintains a physical address in both San Francisco, CA and Sunnyvale, CA with visible signage on both offices. Since Nokia's has U.S. offices within this District, the first requirement is satisfied.

The second requirement is that "the discovery is 'for use in a proceeding in a foreign or international tribunal[.]'"[28] The proceeding does not need to be "'pending' or imminent[,]'" instead, a party may use § 1782 to request materials for a proceeding "within reasonable contemplation."[29] Here, Sckipio reasonably contemplates foreign litigation against DT. Sckipio alleges that DT's Super-Vectoring service in Germany, implemented in part using Nokia Line

---

[24] *Khrapunov,* 931 F.3d at 925.

[25] *See* https://www.nokia.com/fi_fi/nokia-technologies-contact-information/ (last accessed June 18, 2024).

[26] *In re Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1036-38 (N.D. Cal. 2016).

[27] *See, e.g., In re Super Vitaminas, S.A.*, No. 17-mc-80125-SVK, 2017 WL 5571037, at *2 (N.D. Cal. Nov. 20, 2017) (holding that first statutory requirement is met where a party holds an office within the district); *In re TPK Touch Sols. (Xiamen) Inc.*, No. 16-mc-80193-DMR, 2016 WL 6804600, at *2 (N.D. Cal. Nov. 17, 2016) (subpoenaed party was "found" within this District because they held an office within in this District.).

[28] *Khrapunov,* 931 F.3d at 925.

[29] *Intel*, 542 U.S. at 259.

Cards, infringes its '826 patent.[30]  In light of this, Sckipio reasonably believes that the instant application will yield evidence from Nokia that it can use to support a patent infringement lawsuit by Sckipio against DT in Germany.  The second requirement is satisfied.

The third and final statutory requirement is whether the application is made by an "interested person."[31]  A litigant qualifies as an interested person.[32] Additionally, a person filing a § 1782(a) discovery application for materials to use in a future foreign proceeding is an interested person" even if they are not yet a litigant.[33] This court has previously granted Section 1782 applications where the petitioner was not yet a litigant.[34]  As recently as March 12, 2024, this Court granted a Section 1782 application in similar circumstances.

Here, Sckipio reasonably contemplates litigation against DT for patent infringement in Germany.  The information requested from Nokia will inform Sckipio's patent infringement claims.  Similar to the petitioner in *Geo Holdings Corp.*, Sckipio is a future litigant and qualifies as an "interested person" for the purposes of the third statutory requirement.

**B.**     **The *Intel* Factors Support Granting the Instant Application**

**1.**     **Factor 1:  Nokia Is Not a Party to the Germany Proceeding**

Congress drafted Section 1782 to allow litigants engaged in foreign proceedings to request discovery from parties within the jurisdiction of a U.S. District Court who may have information

---

[30] Exhibit 1.

[31] *Khrapunov,* 931 F.3d at 925.

[32] *Intel*, 542 U.S. at 259.

[33] S*ee In re Meiyoukai Med. Corp.*, No. 24-mc-80097-BLF, 2024 U.S. Dist. LEXIS 78920, at *6 (N.D. Cal. Apr. 30, 2024) (explaining that a person who may file a § 1782(a) discovery application before actually becoming a litigant).

[34] *See Geo Holdings Corp. v. Google LLC*, 2024 U.S. Dist. LEXIS 43768.

relevant to those proceedings.[35]  The Supreme Court noted that there is a difference between a request for discovery from a participant in foreign litigation and a request for discovery from a party that is not a participant in that litigation.[36]  In terms of a party to the foreign litigation, the foreign court could just order the litigant to produce evidence; whereas that same foreign court does not have the jurisdiction to order a third party in the U.S. and it would be necessary for the District Court to get involved.[37]  Here, the first factor weighs in favor of Sckipio because Nokia is not a party in the contemplated Germany Proceeding.

### 2. Factor 2:  German Courts Are Receptive to U.S. Judicial Assistance

German courts are receptive to U.S. judicial assistance. [38]  The Supreme Court has acknowledged certain foreign courts may be receptive to intervention by U.S. courts and others may not.[39]  The absence of evidence that a foreign court is not receptive to foreign aid or a long-standing relationship between the countries, however, should weigh in favor of the requesting party.[40]  Further, in the case of Germany, if a German Court finds the discovery to be improper, it will be able to exclude that material from evidence.[41]

---

[35] *Intel*, 542 U.S. at 264.

[36] *Id*.

[37] *Id*.

[38] *See e.g.*, *Lufthansa Technik AG v. Thales Avionics, Inc.*, Case No. 822MC00034JVSKES, 2023 WL 2908584, at *9 (C.D. Cal. March 31, 2023) (explaining that German courts are receptive to American discovery actions).

[39] *Intel*, 542 U.S. at 264.

[40] *See id*. at 261–62 (explaining that courts should not assume that a foreign proceeding does not accept American judicial aid unless there is evidence showing that the country is hostile to American aid).

[41] *See Cryolife, Inc. v. Tenaxis Med., Inc.*, No. C08-05124 HRL, 2009 U.S. Dist. LEXIS 3416, at *9 (N.D. Cal. Jan. 13, 2009)(explaining that German Courts have the ability to exclude evidence not deemed to be admissible).

Here, the court in the Germany proceeding will be aware of how Sckipio obtained the evidence requested in this petition and will have the ability to admit or exclude evidence in accordance with its own rules and procedures. Sckipio intends to pursue a claim in Germany against DT. If granted, Sckipio will disclose this petition and any associated documents pursuant to its proposed Court Order.[42] The judge in the Germany proceeding would then be able to decide independently whether to admit or exclude the information obtained using this petition which leaves the ultimate control of this evidence to the Court in that future proceeding. The second factor weighs in favor of Sckipio's request since German courts are receptive to receiving judicial assistance from the United States and have a mechanism to exclude inadmissible evidence in German Court.[43]

### 3. Factor 3: Sckipio Does Not Seek To Circumvent Foreign Proof-Gathering Restrictions

Section 1782(a) does not require United States courts to investigate a foreign proceeding's discovery rules, but the presence of evidence demonstrating that the requesting party is attempting to circumvent discovery rules should weigh against granting the order.[44] When there is no evidence showing an alternative motivation, however, this factor weighs in the requesting party's favor.[45]

---

[42] Exhibit E: [Proposed] Order.

[43] *See e.g.*, Lufthansa Technik AG at *9.

[44] *See e.g.*, *In re Ex Parte in re Eshelman*, No. 5:23-mc-80015-EJD, 2023 U.S. Dist. LEXIS 81129, at *8 (N.D. Cal. May 9, 2023) (quoting *Med. Inc. Ass'n Smile Create*, 547 F. Supp. 3d 894, 899 (N.D. Cal. 2021) ) ("Courts have found that this factor weighs in favor of discovery where there is nothing to suggest that the applicant is attempting to circumvent foreign proof-gathering restrictions"); *see also e.g., In re Murchinson Ltd.*, No. 2:23-mc-00191-SB-PD, 2024 U.S. Dist. LEXIS 24321, at *10 (C.D. Cal. Jan. 26, 2024) (explaining that courts should give deference that a party is not attempting to circumvent a foreign discovery procedure unless there is evidence showing).

[45] *Id.*

Here, Sckipio is not trying to circumvent German discovery rules. To the best of Sckipio's knowledge and belief, there is no mechanism by which a German Court could compel Nokia to provide this documentation otherwise. Additionally, Section 1782 defines a well-established process to acquire evidence in advance of a foreign litigation. There is no presumption of circumvention. This factor weighs in favor of Sckipio because there is no evidence that Sckipio is acting in bad faith.

### 4. Factor 4: Sckipio's Request Is Not Unduly Burdensome

The final factor of *Intel* was designed to prevent court orders resulting in overly burdensome or intrusive production.[46] Although Section 1782 requests are inherently intrusive because they are requests for private information, they are not unduly intrusive when the request is narrowly tailored to the foreign proceeding's needs.[47] Even if a court finds a request burdensome, they may still grant the order, but trim the requested documentation or allow the opposing party to bring a motion to quash.[48]

Here, documents requested from Nokia are not unduly burdensome because Sckipio is requesting routine information relating to the Nokia Line Cards. In large part, the technical specifications, related source code, and technical data sheets are likely already distributed to customers or technicians working with the Nokia Line Cards. This request has been narrowly tailored so it only accounts for what Sckipio requires to show that DT's Super-Vectoring service offering practices Annex A of the G.Vector Standard. The fourth factor weighs in favor of

---

[46] *Intel*, 542 U.S. at 265.

[47] *See In re Meiyoukai Med. Corp.*, No. 24-mc-80097-BLF, 2024 U.S. Dist. LEXIS 78920, at *9 (N.D. Cal. Apr. 30, 2024) (explaining that information necessary to establishing a complainant's foreign claim is not unduly intrusive even though it is revealing anonymous individuals' identities); *see also In re Murchinson Ltd.,* No. 2:23-mc-00191-SB-PD, 2024 U.S. Dist. LEXIS 24321, at *11 (C.D. Cal. Jan. 26, 2024).

[48] *Id*.

Sckipio because the request is reasonable and is not overly burdensome since the information should be readily available.

## V. A PROTECTIVE ORDER WILL RESOLVE ANY CONFIDENTIALITY CONCERNS THAT MAY ARISE

Absent a legal privilege, courts do not evaluate concerns of confidentiality when deciding whether to grant § 1782 discovery under *Intel*.[49] Rather, courts have the discretion under Federal Rule of Civil Procedure 26(c) to enter a protective order to protect the confidentiality of discovered materials.[50] Here, a protective order will alleviate any concerns that Nokia may have regarding the potentially confidential nature of the information being requested by Sckipio. A proposed protective order has been included as an exhibit with this petition.[51]

## VI. CONCLUSION

For the foregoing reasons, Sckipio respectfully requests this Court grant its application for discovery pursuant to 28 U.S.C. § 1782.

---

[49] *See* 542 U.S. at 260, 264-66.

[50] *See In re Ex Parte Application of Apple Inc.,* 2012 U.S. Dist. LEXIS 66669, at *9 (N.D. Cal. May 2, 2012).

[51] *See* Exhibit E.

July 3, 2024

Respectfully submitted,

**FISH & RICHARDSON P.C.**

By: */s/ Seth M. Sproul*
Seth M. Sproul (CA SBN: 217711)
FISH & RICHARDSON P.C.
12860 El Camino Real
Ste 400
San Diego, CA 92130
Tel: (858) 678-4343 / Fax: (858) 678-5099
sproul@fr.com

John S. Goetz (NY SBN: 4295366) (*pro hac vice* to be filed)
Alexander Mazza (NY SBN: 5752704) (*pro hac vice* to be filed)
FISH & RICHARDSON P.C.
7 Times Square
20th Floor
New York, NY 10036
Tel: (212) 765-5070 / Fax: (212) 258-2291
goetz@fr.com
mazza@fr.com

Susmitha Sayana (DE SBN: 007337) (*pro hac vice* to be filed)
FISH & RICHARDSON P.C.
222 Delaware Ave
17th Floor
Wilmington, DE 19801
Tel: (302) 778-8417 / Fax: (302) 652-0607

*Attorneys for Petitioner Sckipio Technologies S.I. Ltd.*